STATE OF VERMONT

| SUPERIOR COURT<br>Washington Unit | | CIVIL DIVISION<br>Docket No. 12-1-20 Wncv |
|---|---|---|
| Alfred Brochu,<br>Plaintiff<br><br>v.<br><br>Michael P Touchette,<br>Defendant | FILED<br><br>MAR 1 9 2021<br><br>VERMONT SUPERIOR COURT<br>WASHINGTON CIVIL | USDC - DVT<br>2:21-cv-259<br><br>DECISION ON MOTION |

The State's Motion to Dismiss

Petitioner Alfred Brochu is a Vermont inmate in a non-Compact out-of-state facility located in Tutwiler, Mississippi and operated privately by CoreCivic. See 28 V.S.A. §§ 1601–1621 (Interstate Corrections Compact). CoreCivic is contracted by the State of Vermont to house some number of inmates. In this Rule 75 case, Mr. Brochu grieved three issues or actions squarely within CoreCivic's control: that his personal property (a canteen) was seized and never returned; that a CoreCivic corrections officer is racially biased against white people and should be "removed"; and that grievance forms are not reasonably available.

Mr. Brochu grieved these issues under the Vermont "formal" (generally applicable) grievance policy. DOC Directive #320.01. He did not pursue his property claim under Vermont's more specific property-grievance procedure, DOC Directive #321.02. And he did not pursue any of his claims under CoreCivic's generally applicable grievance policy, CoreCivic Policy 14-5, or its more specific property-grievance procedure, CoreCivic Policy 14-6.

The State has filed a motion to dismiss. It argues that Mr. Brochu failed to exhaust his administrative remedies to the extent that he never pursued his grievance under CoreCivic's grievance procedures, the complaint was filed in an untimely manner, and he has failed to articulate a cognizable claim under Rule 75.

*The property and staff bias claims*

The event by which Mr. Brochu lost his property occurred on May 23, 2019. See Affidavit of Soto. The event was a cell search which found what was deemed contraband, a cell phone and some pills. Also apparently seized was the property which is the subject of this action. It was taken because it did not appear on his property inventory and he did not produce a receipt for it or other proof of ownership as required by CoreCivic policies. *Id.* Mr. Brochu claims that he owns the canteen but was never given a receipt. There are no factual allegations describing any acts of racial prejudice in the pleadings.

The Vermont DOC's grievance policy plainly directs grievances about ordinary conditions-of-confinement issues arising in out-of-state facilities to the grievance procedures available in those out-of-state facilities.

    a. Inmates placed in out of state facilities may grieve out of state conditions
    using the grievance process for that out of state facility.
    b. Inmates placed in out of state facilities who have an emergency grievance
    related to that facility will use that facility's local emergency grievance process.

DOC Directive #320.01, Procedural Guidelines § 16. In a proper case, one might claim that such a delegation is improper. See 4 Rights of Prisoners § 18:9 (5th ed.) ("It is one thing to allow a private prison to manage the day-to-day operations of the facility; it is quite another to permit private officials to make critical decisions that will have a profound impact on the criminal sentence an inmate is serving."). This, however, is not such a case. Mr. Brochu raises only day-to-day operational issues obviously within the control of CoreCivic, yet he never grieved those issues using CoreCivic's grievance procedures. At a minimum, then, he failed to exhaust his administrative remedies.

  Moreover, while the court is concerned that inmates may be subject to too many sources of rules, it is logical that a grievance system would lead to a remedy which can be readily enforced. As to this court's authority over the action concerning property, no such authority is apparent to the court. Issues regarding property which are local to the CoreCivic facility, such as this is, must be addressed through that facility's grievance systems. Additionally, this particular property issue has implications on local security (what items of property a prisoner may possess).

  Mr. Brochu argues at length that Vermont and CoreCivic grievance forms are not reasonably available to inmates (and him in particular) in his facility, though he did manage to eventually file the Vermont grievance forms. Generally, the obligation to properly exhaust an administrative remedy is contingent on the actual availability of that administrative remedy. The lack of an available remedy may excuse the failure to exhaust. See *Ross v. Blake*, 136 S.Ct. 1850, 1859–60 (2016). Thus, if Mr. Brochu had presented these claims to CoreCivic, and CoreCivic refused to consider them because they did not properly appear on forms to which Mr. Brochu had no reasonable access, Mr. Brochu might be relieved of the obligation to exhaust. Those circumstances would not authorize Mr. Brochu to simply select a different entity to hear his claims and pursue its grievance policy.

  It is unnecessary to address the State's argument that this case was filed in an untimely manner in detail. The court simply notes that the State's argument that Mr. Brochu only had 30 days to seek review under Rule 75 after the Commissioner failed to respond to his appeal is plainly wrong. Under Rule 75, if the agency fails to act, the petitioner has six months to seek review. V.R.C.P. 75(c).

  The court also notes, regarding the staff bias issue, that it perceives no authority over that issue under Rule 75. Basic personnel decisions by the private prison contractor are outside the court's authority and would not ordinarily fall under a claim properly framed under Rule 75, and Mr. Brochu has not attempted to frame his claim under any other source of authority.

  Rule 75 is the contemporary procedure used for relief in the nature of the ancient common law "extraordinary" writs. *Vermont State Employees' Ass'n, Inc. v. Vermont Criminal*

*Justice Training Council*, 167 Vt. 191, 195 (1997) ("When, as here, legislation is silent on whether review is available, we have permitted appeal under Rule 75 so long as review would have been available under any one of the extraordinary writs, such as mandamus, scire facias, prohibition, quo warranto, and certiorari."). As discussed in *Rheume v. Pallito*, 2011 VT 72, 190 Vt. 245, in the correctional context, those writs often are of limited value with respect to review of DOC decisions.

> The function of a writ of prohibition is to prevent the unlawful assumption of jurisdiction by a tribunal contrary to common law or statutory provisions." There is no question that the structuring of programming requirements is within the agency purview of the DOC; thus Rule 75 review cannot be derived from this writ.
>
> "A writ of mandamus can enforce the performance of only existing duties. It can neither create new duties nor require of a public officer more than the law has made it his duty to do." Petitioner has no pre-existing right to a change in his programming requirements, and thus, a writ of mandamus would not be a proper avenue for a Rule 75 appeal.
>
> The common law writ of certiorari thus seems the most likely avenue from which petitioner could derive the right of Rule 75 appeal with regard to his programming requirements. This writ applied to review of judicial actions by inferior courts and tribunals. "In determining the availability of review under Rule 75 this Court looks to the applicable law in the substantive area governing the case."

*Rheaume v. Pallito*, 2011 VT 72, ¶¶ 6-8, 190 Vt. 245 (citation omitted); see generally *Inman v. Pallito*, 2013 VT 94, 195 Vt. 218.

Both *Rheaume* and *Inman* addressed DOC programming decisions and held that they were not quasi-judicial in nature and Rule 75 review was not available. Even if Mr. Brochu had properly presented his property and staff bias claims under Vermont's grievance procedure, he has failed to frame those claims in such a manner as to reveal that either would be cognizable under Rule 75.

### *The grievance form claim*

The same is not clearly the case with Mr. Brochu's grievance form claim. He alleges that grievance forms and grievance policies are simply not made available to inmates, or are given on request only after long delays, making it difficult or impossible to pursue grievances. He asserts this claim against the Vermont DOC, the only defendant in this case. In fact, by statute, "an inmate's right to file grievances shall not be restricted" and "[a]ll inmates shall be informed of the grievance procedure, which shall be available to all inmates." 28 V.S.A. § 854(2), (3). Mr. Brochu is claiming that his right to file grievances is being restricted and he is not being given access to the grievance procedures. This statute protects Mr. Brochu regardless that he is in an out-of-state facility. See *Nichols v. Hofmann*, 2010 VT 36, ¶ 12, 188 Vt. 1. It presumably may be

enforced directly against the State of Vermont by relief in the nature of mandamus under Rule 75.[1] See *Wool v. Menard*, 2018 VT 23, ¶ 18, 207 Vt. 25.

### Order

For the foregoing reasons, the State's motion to dismiss is granted as to Mr. Brochu's property and staff bias claims. It is denied with regard to his grievance form claim. Set for pre-hearing conference.

Electronically signed on 2/2/2021 2:37 PM, pursuant to V.R.E.F. 9(d)

_____
Robert R. Bent,
Judge

---

[1] The mechanics of how the State would require CoreCivic to comply with any such relief ordered against the State are not fully clear to the court.

4